# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# WESTERN DIVISION

| | |
|---|---|
| DAVID RISSLING, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | 7:23-cv-01326-LSC |
| ) | |
| MAGARIA BOBO, *et al.*, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OF OPINION

### I. INTRODUCTION

Plaintiffs David Rissling, Eric Peebles, Gail Clayton, Gilley Pressley, and the National Federation of the Blind of Alabama ("Plaintiffs") bring this action based on Alabama's allegedly discriminatory failure to provide certain absentee voting accommodations for disabled individuals. (Doc. 4.) Before the Court is Defendants Magaria Bobo, Susan Potts, and Jacquelin Anderson-Smith's ("Defendants") motion to dismiss. (Doc. 18.) The motion is fully briefed and ripe for review. Upon due consideration and for the reasons stated herein, the motion to dismiss is due to be **GRANTED IN PART** and **DENIED IN PART**.

## II.  BACKGROUND[1]

Plaintiffs are registered Alabama voters. (Doc. 4 ¶¶ 102, 103.) They have disabilities ranging from cerebral palsy and quadriplegia (*id.* ¶ 12) to blindness. (*Id.* ¶ 17.) These disabilities cause struggles with reading and handling printed text. (*Id.* ¶ 12.) To accommodate these struggles, Plaintiffs use screen-reader software on their personal devices to interact with digital materials. (*Id.* ¶¶ 12, 17, 22, 26.)

In previous election cycles, three of them voted in person through polling place assistive technology and help from poll workers; some of them vote exclusively through these means. (*Id.* ¶¶ 18, 19, 23, 27.) During the 2022 general election, the remaining Plaintiff did not vote in person because he failed to verify his polling place in time to vote. (*Id.* ¶ 15.) Plaintiffs claim that the currently available polling place technology is often not functioning and is not sufficient to handle the long lines of voters who need it, resulting in long wait times. (*Id.* ¶ 19.) Three of the individual Plaintiffs previously voted absentee—two had help filling out their ballots at home (*id.* ¶¶ 14, 28), and one visited the Tuscaloosa Circuit Clerk's office where he cast

---

[1] In evaluating a motion to dismiss, this Court "accept[s] the allegations in the complaint as true and constru[es] them in the light most favorable to the plaintiff." *Lanfear v. Home Depot, Inc.*, 679 F.3d 1267, 1275 (11th Cir. 2012) (quoting *Ironworkers Loc. Union 68 v. AstraZeneca Pharm., LP*, 634 F.3d 1352, 1359 (11th Cir. 2011)). The following facts are, therefore, taken from the allegations contained in Plaintiffs' complaint, and the Court makes no ruling on their veracity.

his absentee ballot in person. (*Id.* ¶ 24.) All Plaintiffs intend to continue voting in future elections. (*Id.* ¶¶ 16, 25, 29.)

Along with the individual Plaintiffs, the National Federation of the Blind of Alabama ("NFB-AL") joins this suit on behalf of itself and its members. (*Id* ¶ 30.) NFB-AL is affiliated with the National Federation of the Blind, both of which seek to "promote[] the general welfare of the blind" and "remove[] barriers that result in the denial of opportunity to blind persons in virtually every sphere of life." (*Id.*) Clayton, Rissling, and Pressley are members of NFB-AL. (*Id.* ¶ 31.)

Alabama conducts elections pursuant to Title 17 of the Code of Alabama. Under that code, to be a qualified voter, an individual must meet the eligibility criteria set out in Article 8 of the Alabama Constitution. Ala. Code § 17-3-30. To meet the eligibility criteria and register to vote, an individual must: (1) be a citizen of the United States, (2) be at least 18 years old, and (3) have resided in Alabama "for the time provided by law." ALA. CONST. art. 8, § 177. Further, no individual who has been convicted of a felony involving moral turpitude or who is mentally incompetent is eligible to vote. *Id.* But for all individuals who meet the eligibility criteria, the election code guarantees that "[e]very voter in Alabama shall have the right to vote a secret ballot, and that ballot shall be kept secret and inviolate." Ala. Code § 17-6-34. This guarantee covers those qualified voters who have permanent disabilities

preventing their attendance at the polls and are thus allowed to vote by absentee ballot. *Id.* § 17-11-3.1.

To obtain an absentee ballot, voters must request one through the secretary of state's website. (Doc. 4 ¶ 45.) If approved, Alabama voters living in the United States receive three envelopes along with the ballot: a secrecy envelope, an affidavit envelope, and a pre-addressed outer envelope. (*Id.* ¶ 46.) To complete the process, voters must use the envelopes much like a nesting doll: the ballot goes in the secrecy envelope, which goes in the affidavit envelope, which goes in the outer envelope. (*Id.*)

Alabama offers an electronic alternative to paper absentee ballots for two classes of absentee voters: (1) its active military members who are outside the U.S. and (2) its overseas voters. (*Id.* ¶ 55.) For these voters, Alabama provides a Remote Accessible Vote-By-Mail system. (*Id.*) This system allows voters to receive and return ballots through an online portal or via email. (*Id.* at 54.) According to Plaintiffs, Alabama should adopt electronic absentee ballot alternatives like the one used for overseas voters to "afford [disabled voters] equally effective communication with equivalent privacy and independence." (*Id.* ¶¶ 51, 85.)

Accordingly, Plaintiffs initially sued Alabama's secretary of state, alleging the same violations as those alleged here—that Alabama's absentee voting scheme

violates both the Americans with Disabilities Act ("ADA") and the Rehabilitation Act of 1973. *See Nat'l Fed'n of Blind of Ala. v. Allen*, 661 F. Supp. 3d 1114 (N.D. Ala. 2023). The court dismissed the suit for lack of standing, concluding that the secretary of state could not implement Plaintiffs' requested relief, and thus was and is the improper individual to sue for these claims. *Id.* at 1123.

Plaintiffs then sued Defendants in their official capacities as Absentee Election Managers for various Alabama counties, claiming violations of both the ADA and the Rehabilitation Act. Plaintiffs allege that absent injunctive relief, they "will be denied their right to vote privately and independently by absentee ballot." (*Id.* ¶ 89.)

### III. STANDARD OF REVIEW

In general, a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, to withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint "must plead enough facts to state a claim to relief that is plausible on its face." *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347–48 (11th Cir. 2016) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Stated another way, the factual

allegations in the complaint must be sufficient to "raise a right to relief above the speculative level." *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1291 (11th Cir. 2010). A complaint that "succeeds in identifying facts that are suggestive enough to render [the necessary elements of a claim] plausible" will survive a motion to dismiss. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556) (internal quotation marks omitted).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial experience and common sense." *Id.* If the pleading "contain[s] enough information regarding the material elements of a cause of action to support recovery under some 'viable legal theory,'" it satisfies the notice pleading standard. *Am. Fed'n of Labor & Cong. of Indus. Orgs. v. City of Miami*, 637 F.3d 1178, 1186 (11th Cir. 2011) (quoting *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683–84 (11th Cir. 2001)).

IV. DISCUSSION

Plaintiffs contend that Defendants violate the ADA and Rehabilitation Act by failing to offer electronic absentee ballots as a means for them to vote absentee privately and independently. (Doc. 4 ¶¶ 91, 105, 109.) Defendants argue that Plaintiffs' Rehabilitation Act claim must be dismissed because Plaintiffs have not alleged facts showing that they were discriminated against *solely* on the basis of their disabilities, which is an essential element of their Rehabilitation Act claim. This Court agrees.

Defendants do not, however, seriously dispute that Plaintiffs have stated a prima facie ADA claim.[2] Instead, they attack Plaintiffs' claim by asserting what are or amount to several affirmative defenses, including: (1) the ADA does not apply to elections; (2) requiring electronic ballots would impermissibly work a "fundamental alteration" of Alabama's voting scheme; and (3) private and independent absentee voting is not a protected program or benefit under the ADA. These defenses are, at this stage, underdeveloped.

---

[2] A prima facie ADA claim requires a plaintiff to allege that (1) he is a "qualified individual with a disability"; and (2) he was "excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity" (3) "by reason of" his disability. *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007) (citing *Shotz v. Cates*, 256 F.3d 1077, 1079 (11th Cir. 2001)); 42 U.S.C. § 12132. Plaintiffs allege facts plausibly showing that, due to their qualifying disabilities, they have been denied the benefit of voting absentee privately and independently, and that they are otherwise qualified to vote absentee in Alabama. Accordingly, they have stated a prima facie claim under the ADA. *Id.*

**A. Federal courts have considered ADA claims in the context of elections.**

Defendants argue that Plaintiffs' ADA claim fails because the ADA does not preempt Alabama election law, which requires them to offer electronic absentee ballots only to military and overseas voters. Though styled as a preemption defense, Defendants essentially argue that compliance with Alabama law shields them from ADA liability. This Court is unpersuaded. *See Campbell v. Universal City Dev. Partners, Ltd.*, 72 F.4th 1245, 1258 (11th Cir. 2023) ("If compliance with state law were [an accepted defense to an ADA claim,] then any state could unilaterally nullify the ADA by enacting a state law requiring discrimination. That can't be right.").

The Supremacy Clause of the Constitution provides that federal law "shall be the supreme Law of the Land; ... any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI, cl. 2. From this Clause derives the "fundamental principle" that "Congress has the power to preempt state law" with federal law. *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). Congress does this in three ways: (1) with an "express provision for preemption"; (2) by "occupy[ing] the field" of law in which the state law operates; and (3) impliedly, whereby "state law is naturally preempted to the extent of any conflict with a federal statute." *Id.*

Defendants argue that, because elections are traditionally regulated by the States, this Court should apply the doctrine of presumption against preemption. Under that doctrine, courts sometimes require "unmistakably clear" language in a federal statute before presuming that Congress intended to preempt state law in an area traditionally regulated by the States. *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991). Defendants rely primarily upon three Supreme Court opinions to assert that the presumption against preemption applies in this case.[3] But all three belie Defendants' argument: they establish that the presumption against preemption applies only when the federal law at issue is ambiguous. *See id.* at 470 ("In the face of such ambiguity, we will not attribute to Congress an intent to intrude on state governmental functions...."); *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 9 (2013) (resolving a preemption dispute over a federal law that was "fairly susceptible of two interpretations"); *Bond v. United States*, 572 U.S. 844, 859 (2014) ("These precedents make clear that it is appropriate to refer to basic principles of federalism embodied in the Constitution to resolve ambiguity in a federal statute.").

Defendants make no attempt to identify or challenge an ambiguity here. Absent such statutory ambiguity, "there is no presumption against preemption."

---

[3]   Defendants also rely on the century-old case of *United States v. Gradwell*, 243 U.S. 476 (1917), which held that a federal law protecting tax revenue did not apply to elections. But *Gradwell* "was not even a pre-emption case" and "says nothing at all about pre-emption." *Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 15 n.5 (2013).

*Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1179 n.13 (11th Cir. 2008) (Barket, J., concurring) (citing *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998)); *id.* at 1167–68 (rejecting the same presumption-against-preemption argument that Defendants assert here).

Furthermore, several federal courts have either impliedly or expressly recognized that, at least sometimes, the ADA applies in the context of elections and preempts conflicting state elections law. *See, e.g.*, *Lightbourn v. Cnty. of El Paso, Tex.*, 118 F.3d 421, 431 (5th Cir. 1997) (recognizing that the ADA "might cover some aspect of elections" and that "the plaintiffs could state a claim under the ADA" if the facts were different); *Nat'l Fed'n of the Blind v. Lamone*, 813 F.3d 494, 501 (4th Cir. 2016) (addressing ADA claim that disabled voters could not "vote privately and independently" under Maryland's absentee voting scheme); *Hindel v. Husted*, 875 F.3d 344, 345 (6th Cir. 2017) (reversing dismissal of ADA claim where blind voters alleged that Ohio's absentee voting scheme required them to "seek the aid of a sighted person in order to vote absentee, thus depriving them of the ability to vote anonymously"); *Johnson v. Callanen*, 608 F. Supp. 3d 476, 487 (W.D. Tex. 2022) ("If the Election Code conflicts with Title II of the ADA, then federal law would preempt state law."); *see also Campbell v. Universal City Dev. Partners, Ltd.*, 72 F.4th

1245, 1257 (11th Cir. 2023) (holding that the ADA preempts any state law providing less protection than the ADA).

So has the Eleventh Circuit. *Am. Ass'n of People with Disabilities v. Harris*, 647 F.3d 1093, 1096 (11th Cir. 2011) (addressing claims that Florida's voting machines violated the ADA by stripping disabled voters of their right to cast a "direct and secret ballot"). As Plaintiffs here point out, the Eleventh Circuit's analysis in *Harris* would make no sense if the ADA did not apply to elections. *See id.* at 1107 (finding the plaintiffs' claim unmeritorious but confirming that the ADA "does not leave disabled voters in the lurch" (citing 42 U.S.C. § 12101(a)(3))). This Court is bound to follow the Eleventh Circuit's guidance. *In re Hubbard*, 803 F.3d 1298, 1309 (11th Cir. 2015) ("[C]ourts of this circuit are bound by the precedent of this circuit."). The Eleventh Circuit has applied the ADA to voting; so will this Court.

**B. It is too soon to decide whether requiring electronic absentee voting would fundamentally alter Alabama's voting scheme.**

Defendants next seek to escape ADA liability by raising two related arguments. They argue that (1) using a paper ballot is an "essential eligibility requirement" to voting in Alabama, and (2) requiring Defendants to provide electronic voting would work a "fundamental alteration" in the nature of Alabama elections. This Court concludes that these issues should be resolved with the benefit of a developed record.

As part of their prima facie ADA claim, Plaintiffs must plausibly allege that they are "qualified individual[s]," which here means that they meet the "essential eligibility requirements" for absentee voting, "with or without reasonable modifications to rules, policies, or practices." 42 U.S.C.A. §§ 12131, 12132. They have done so. (Doc. 4 ¶ 79.)

Defendants attempt to refute Plaintiffs' prima facie claim by arguing that, because Alabama's voting regulations make sense only as applied to paper ballots, the use of a paper ballot is an "essential eligibility requirement" for having one's vote counted in Alabama.[4] The problem with this argument is that it falls short of answering the dispositive inquiry: the question is not whether Alabama law contemplates the use of paper ballots, nor even whether paper ballots are required; the question is whether that requirement is "essential." 42 U.S.C. § 12131(2); *see* 28 C.F.R. § 35.130(b)(8) ("A public entity shall not impose or apply eligibility criteria that screen out or tend to screen out an individual with a disability … unless such criteria can be shown to be necessary for the provision of the service, program, or activity being offered."); *cf. People First of Alabama v. Merrill*, 479 F. Supp. 3d 1200, 1212 (N.D. Ala. 2020) ("These points prove only that providing photo ID is a

---

[4] For example, Alabama Code § 17-6-24 governs the "[p]rinting and design" of the ballots; § 17-6-26 states that ballots "may be printed upon one or more separate pages or cards"; and § 17-6-47 requires that probate judges have ballots "printed, at the expense of the county."

requirement; they do not show that the requirement is essential.").

"Whether a particular aspect of an activity is 'essential' will turn on the facts of each case." *Schaw v. Habitat for Human. of Citrus Cnty., Inc.*, 938 F.3d 1259, 1266 (11th Cir. 2019) (citing *Schwarz v. City of Treasure Island*, 544 F.3d 1201, 1221 (11th Cir. 2008)); *accord Lamone*, 813 F.3d at 509 ("The underlying question is fact-specific."). The question that must be answered is, "What is the basic purpose of the rule or policy at issue?" *Schaw*, 938 F.3d at 1266. The closest Defendants come to suggesting an answer is in a footnote explaining that the electronic voting service offered to overseas voters comes with "additional requirements … to compensate for the security risk of not returning a paper ballot." (Doc. 18 at 15 n.9.) That is not enough. Defendants' mere citation to Alabama statutes governing elections procedure is insufficient to establish that using a paper ballot is an "essential eligibility requirement" to having one's vote counted in Alabama. *See People First of Alabama v. Merrill*, 467 F. Supp. 3d 1179, 1219 (N.D. Ala. 2020) ("[D]efendants' bald assertion of the requirement's essential nature is insufficient to block the plaintiffs' claim.")

For similar reasons, Defendants' fundamental alteration argument is unavailing at this juncture. *See Lamone*, 813 F.3d at 508 (finding inference from statutory text, without more, insufficient to show that waiver or modification of a

requirement will fundamentally alter a service). Because the ADA "requires only 'reasonable modifications,'" it excludes liability where compliance with its terms would "effect a fundamental alteration in the nature of the service" at issue. *Tennessee v. Lane*, 541 U.S. 509, 523 (2004); 28 C.F.R. § 35.130(b)(7)(i) ("A public entity shall make reasonable modifications in policies, practices, or procedures … unless … the modifications would fundamentally alter the nature of the service, program, or activity."). "Fundamental alteration" is an affirmative defense that must be pled and proven by the defendant. *Id.*; 28 C.F.R. § 35.164; *Hindel*, 875 F.3d at 347. "Affirmative defenses to ADA claims such as this are typically fact-based and not capable of resolution on the basis of the pleadings alone." *Id.* (citations omitted).

In *Hindel*, the Sixth Circuit reversed a district court's grant of judgment on the pleadings in a case factually similar to this one. *Id.* at 350. The plaintiffs alleged Ohio's absentee voter system violated the ADA by failing to accommodate visually impaired voters. *Id.* at 345. And just like Defendants attempt here, the *Hindel* defendant used Ohio statutory requirements to successfully persuade the trial court that granting the plaintiffs' requested relief would fundamentally alter Ohio's voting scheme. *Id.* at 346. This was error. *Id.* at 347. The Sixth Circuit explained that finding a fundamental alteration would be appropriate only after evidentiary development either through discovery, expert testimony, a hearing, or trial. *Id.*

Here, as in *Hindel*, this matter has not reached the stage where it would be appropriate for this Court to determine whether Plaintiffs' requested relief would work a fundamental alteration in the nature of absentee voting in Alabama. Defendants offer bare assertions that granting Plaintiffs' relief would "bloat Alabama's electronic absentee balloting program beyond recognition" and "erode the State's interest in maintaining a paper balloting system." (Doc. 18 at 16.) But what is that interest? What is Alabama's purpose behind maintaining a paper balloting system? Whatever the answer, Defendants bear the burden of proof on this point, and they cannot meet that burden here merely by drawing inferences from statutory text. *E.g.*, *Lamone*, 813 F.3d at 508.

### C. Exclusion from private and independent absentee voting is a proper analytic scope for Plaintiffs' claims.

Finally, Defendants dispute the proper framing of the relevant public service, program, or benefits from which Plaintiffs have allegedly been excluded. Plaintiffs contend that the appropriate analytic scope is Alabama's absentee voting system, from which they allegedly have been denied the benefit of voting privately and independently. (Doc. 26 at 20.) Defendants argue that this framing is "overly narrow." (Doc. 18 at 17.) Because United States Supreme Court and other precedent counsels against defining the relevant program or benefit too broadly, this Court concludes that Plaintiffs have plausibly stated a claim for the denial of a benefit of a

public service, program, or activity. *See* 42 U.S.C. § 12132 (prohibiting not only exclusion from participation in public programs, but also denial of benefits of the programs.)

The United States Supreme Court has cautioned courts not to define the scope of a public benefit "so as to avoid questions of discriminatory effects." *Lamone*, 813 F.3d at 504 (citing *Alexander v. Choate*, 469 U.S. 287, 301 (1985)). In *Alexander*, the Supreme Court recognized that "[a]ntidiscrimination legislation can obviously be emptied of meaning if every discriminatory policy is 'collapsed' into one's definition of what is the relevant benefit." 469 U.S. at 301 n.21. Noting this logic, the Fourth Circuit in *Lamone* "determined that Maryland's absentee voting program [was] the appropriate subject of [its] ADA analysis." 813 F.3d at 505. The Second Circuit has further explained that defining the benefit of absentee voting as "merely the opportunity to vote at some time and in some way [] would render meaningless the mandate that public entities may not afford persons with disabilities services that are not equal to that afforded others." *Disabled in Action v. Bd. of Elections in N.Y.*, 752 F.3d 189, 198–99 (2d Cir. 2014) (internal quotations and brackets omitted) (citing *Alexander*, 469 U.S. at 301).

Plaintiffs contend that Alabama offers a benefit—the opportunity to vote absentee privately and independently—to those without disabilities that it does not

offer to those with disabilities. *See* 28 C.F.R. § 35.160(b) (requiring public entities to provide an equal opportunity for persons with disabilities to enjoy the benefits of public programs "in such a way as to protect the privacy and independence of the individual with a disability"). Defendants do not appear to dispute that visual and print disabilities make voting without assistance impossible under Alabama's current absentee voting scheme, or that many Alabama voters without such disabilities vote absentee without third-party assistance. (*See* docs. 4 at 4–5; 18 at 3.) Therefore, Plaintiffs have plausibly stated a claim: that it is not enough for Defendants to offer a program—absentee voting or in-person accommodations—allowing Plaintiffs to vote; they must also do so in a way that does not deny the *benefits* that other individuals enjoy under the voting scheme. *See* 28 C.F.R. § 35.130(b)(1)(iii) (prohibiting public entities from providing "an aid, benefit, or service that is not as effective in affording equal opportunity to … gain the same benefit … as that provided to others"); *accord Johnson*, 608 F. Supp. 3d at 484 ("Title II of the ADA requires Defendants to provide a means by which Plaintiffs and their members can vote by mail privately and independently like all other eligible Texans.").

Defendants cite an Eleventh Circuit opinion for the proposition that the availability of third-party assistance affords Plaintiffs an equal opportunity to enjoy the benefits of voting. (Doc. 18 at 21 (citing *Harris*, 647 F.3d at 1108).) The plaintiffs

in *Harris* argued that available third-party voting assistance did not let them communicate their votes as effectively as non-disabled voters. *See Harris*, 647 F.3d at 1107–08. The district court found after a bench trial that the plaintiffs "presented no evidence" supporting their claim, and that therefore *those* plaintiffs had been afforded an equal opportunity to access voting benefits. *Id.* at 1108. Based on this unappealed finding, the Eleventh Circuit was "assure[d] . . . that the Plaintiffs' rights under the ADA [had] not been abused." *Id.*

Defendants ask this Court to reach that same conclusion for Plaintiffs here without the benefit of a developed evidentiary record. It cannot do so. *See Lamone*, 813 F.3d at 507; *Hindel*, 875 F.3d at 347. The *Harris* decision resolved a specific claim based on a particular set of facts—it did not establish a generally applicable rule of law that third-party assistance per se validates a voting scheme. This Court has had no opportunity to make evidentiary findings about whether Plaintiffs have been afforded an equal opportunity to gain the same benefit of absentee voting as that provided to others. This is a question that cannot be decided on the basis of dueling speculative allegations. *See id.*

### D. Plaintiffs' Rehabilitation Act claim fails to plausibly establish discrimination based solely on disability.

Page **18** of **20**

Finally, Defendants contend that Plaintiffs' Rehabilitation Act claim does not successfully allege discrimination solely due to disability, and therefore the claim fails. (Doc. 18 at 25.) This Court agrees.

To state a claim under the Rehabilitation Act, Plaintiffs must allege facts establishing four things: (1) they are disabled under the Rehabilitation Act, (2) they are "otherwise qualified," (3) they have been excluded from a program or activity "solely" because of their disabilities, and (4) the program or activity is "operated by an agency that receives federal financial assistance." *Harris v. Thigpen*, 941 F.2d 1495, 1522 (11th Cir. 1991). Unlike with their ADA claim, it is not enough for Plaintiffs to show that Defendants' refusal to offer them electronic absentee voting is *partly* due to disability discrimination; they must show that it is *solely* because of disability discrimination. *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005). This essential element of Plaintiffs' claim cannot be met if, as is the case here, Defendants have a basis for discrimination unrelated to Plaintiffs' disabilities. *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1300 (11th Cir. 2005) (*per curiam*).

Plaintiffs argue that they need not explicitly include the word "solely" in their allegations so long as the allegations plausibly establish they were discriminated against solely because of their disabilities. (Doc. 26 at 26–27.) They are correct. But the specific pleading language is not the fatal flaw for Plaintiffs here. The substance

of their allegations shows that Defendants have an alternative basis for refusing to provide electronic voting that is unrelated to Plaintiffs' disabilities: state law limiting electronic absentee voting to those who are military and overseas. This alternative basis for discrimination is sufficient under Eleventh Circuit precedent to defeat Plaintiffs' Rehabilitation Act claim. *See Schiavo*, 403 F.3d at 1300; *accord Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 n.6 (4th Cir. 1999) ("Undoubtedly, the application of a neutral rule that applies to disabled and nondisabled individuals alike cannot be considered discrimination on the basis of disability."). Accordingly, as to Plaintiffs' Rehabilitation Act claim only, Defendants' motion to dismiss is due to be **GRANTED.**

V.  **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss (doc. 18) is due to be **GRANTED IN PART** and **DENIED IN PART**. The Court will enter an order consistent with this Memorandum of Opinion.

**DONE** AND **ORDERED** ON JUNE 24, 2024.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
215647